**In the Matter of C.M. & C. COAL COMPANY, INC., Debtor.**

**Bankruptcy No. 80–06321.**

United States Bankruptcy Court, N.D. Alabama, S.D.

Oct. 5, 1983.

Richard Vincent, Birmingham, Ala., for trustee.

Robert S. More, Knoxville, Tenn., for Dept. of Interior.

OPINION IN RE CLAIM NUMBER 73

STEPHEN B. COLEMAN, Bankruptcy Judge.

At issue here is whether the monetary obligation imposed upon coal operators by 30 U.S.C.A. § 1232(a) is a "tax" to be awarded priority status under Section 507(a)(6) of the Bankruptcy Code.

FACTS:

The United States Department of the Interior filed a priority claim (Claim No. 73 for $53,276.83) against the Debtor for abandoned mine reclamation fees. The Department asserts these fees are in actuality a tax, and therefore have priority status in bankruptcy. The Trustee filed a dispute, not against the amount of the claim, but against the Department's claim of priority. The Trustee insists that the Department has only an unsecured, non-priority claim for a "fee" owed to it, not a tax.

The facts are undisputed, and the matter has been submitted for a purely legal determination and interpretation of a federal statute. Both sides have submitted briefs.

Congress passed the Surface Mining Control and Reclamation Act in 1977. 30 U.S.C.A. § 1201, et seq. Its acclaimed purpose is to overcome the adverse effects surface coal mining has had, and will have on the environment. 30 U.S.C.A. § 1202. To accomplish the reclamation and restoration of abandoned surface mine areas, Congress created the Abandoned Mine Reclamation Fund. 30 U.S.C.A. § 1231. Money is brought into the Fund by subjecting coal operators to a "reclamation fee". This fee is based on the amount of coal produced

---

from both surface mines and underground coal mines. 30 U.S.C.A. § 1232(a). It is this fee assessed against C.M. & C. Coal Company, Inc. upon which the Department bases its claim.

DISCUSSION:

Only one other Bankruptcy Court that we know of has entertained this identical question. *In re James Emby King,* 19 B.R. 936, 8 B.C.D. 1369 (Bkrtcy.E.D.Tenn.1982) held that the reclamation fee was an excise tax under Section 507(a)(6), and excepted it from discharge. We agree with this decision.

A distinction must be made between fees and taxes. To give the Department's claim priority, it must first be a non-dischargeable tax under Section 523(a)(1). Use of the words "reclamation fee" in the Surface Mining Control and Reclamation Act would appear to preempt any interpretation that a tax was being imposed by the Act. However, taxes and fees can be distinguished by studying the purpose, use, and authority of the tax or fee.

Reclamation fees under 30 U.S.C.A. § 1232 undoubtedly have a public purpose. Congress went to great lengths to show how coal mining affects and harms the general public:

> The Congress finds and declares that—
> (c) many surface mining operations result in disturbances on surface areas that burden and adversely affect commerce and the public welfare by destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural, and forestry purposes, by causing erosion and landslides, by contributing to floods, by polluting the water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property, by degrading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water, and other natural resources;
> (j) surface and underground coal mining operations affect interstate commerce, contribute to the economic well-being, se-

curity, and general welfare of the Nation and should be conducted in an environmentally sound manner ... *12 U.S.C.A. § 1201.*

The objectives of the Abandoned Mine Reclamation Fund are set out in 30 U.S.C.A. §§ 1231 and 1232, and the dominant themes are "... the protection of public health, safety, general welfare, and property from extreme danger of adverse effects of coal mining practices ... the restoration of land and water resources and the environment previously degraded by adverse effects of coal mining practices ..." 30 U.S.C.A. § 1233. The benefits of reclamation, no doubt, inure to the general public as well as the owner of reclaimed land.

When compared to the qualities inherent in a true fee obligation, the reclamation fee can clearly be been as a tax. The Supreme Court compared the two in *National Cable Television Association, Inc. v. U.S.,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). In that case, the Federal Communications Commission was authorized by Congress to impose a fee on cable television companies. The purpose of those fees was to oversee and regulate the cable television industry's activities. The Court stated:

> Taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society... *National Cable* 94 S.Ct. at p. 1149.

The surface Mining Control and Reclamation Act did in fact establish a similar regulatory procedure for *new* surface coal mining. 30 U.S.C.A. § 1251, et seq., provides for a separate fee to imposed against coal operators to fund and support the regula-

tory bodies. This fee is collected by requiring coal operators to buy a permit before mining coal, and 30 U.S.C.A. § 1257 provides that "Such fee may be less than but shall not exceed the actual or anticipated cost of reviewing, administering, and enforcing such permit..."

The differences are obvious. A reclamation fee taxes according to ability to pay and benefits at least a substantial segement of the general public. On the other hand, a permit fee is an obligation coal operators choose to take upon themselves when they voluntarily choose to mine coal. A reclamation fee is based on the amount of coal removed from the ground while a permit fee is based on the cost of administering a governmental agency or commission.

The constitutionality of the purpose of the tax is not in issue, and rightfully so, as the use of the moneys as set out in 30 U.S.C.A. § 1231(c) indicates clearly a *pro bono publico* benefit in the reclaiming of lands devastated by past coal mining operations, the prevention of water pollution, and the restoration and prevention of adverse effects of coal mining. This use could be an indication as to whether Congress intended this so called fee to be exacted as a tax.

A separate order will be entered establishing the priority of the Department of Interior's claim.