**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-1352**

———————

WILLIAM L. CRADDOCK; JOHN W. DARLINGTON, JR.;
HARRY L. MARCUM; JAMES C. ROBINSON; DENNIS
BEARD,

Plaintiffs - Appellees,

and

LANDMARK CORPORATION,

Plaintiff,

versus

APOGEE COAL COMPANY,

Defendant - Appellant,

and

TRUSTEES OF THE UNITED MINE WORKERS HEALTH &
RETIREMENT FUNDS; UNITED MINE WORKERS OF
AMERICA 1993 BENEFIT PLAN; MICHAEL H. HOLLAND;
MARTY D. HUDSON; ELLIOT A. SEGAL; A. FRANK
DUNHAM, Trustees of the UMWA 1993 Benefit
Plan,

Defendants.

———————

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Joseph Robert Goodwin,
District Judge.  (CA-01-1009-2)

———————

Argued:  November 30, 2005          Decided:  February 9, 2006

Before WILKINS, Chief Judge, and LUTTIG and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Albert F. Sebok, JACKSON KELLY, P.L.L.C., Charleston, West Virginia, for Appellant. Bradley James Pyles, PYLES, HAVILAND, TURNER & SMITH, L.L.P., Logan, West Virginia; Charles Peter Groppe, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** John Philip Melick, Brian J. Moore, JACKSON KELLY, P.L.L.C., Charleston, West Virginia, for Appellant. Stanley F. Lechner, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C.; John R. Mooney, Douglas L. Parker, MOONEY, GREEN, BAKER & SAINDON, P.C., Washington, D.C., for Appellee UMWA 1993 Benefit Plan.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This appeal arises from a dispute over liability for plaintiffs' retirement health benefits. The district court held that defendant-appellant Apogee Coal Company is liable for the benefits under a contract it entered into with Landmark Corporation, plaintiffs' previous employer. For the reasons that follow, we affirm.

## I.

The original plaintiff in this action was Landmark Corporation, a coal company that has ceased business operations and declared bankruptcy. In 1993, Landmark agreed to do reclamation work for Apogee Coal Company, and the two companies entered into a contract that provided that Landmark would hire workers from a panel of laid-off Apogee employees. During contract negotiations, an issue arose regarding liability for the post-employment benefits of the laid-off Apogee employees hired by Landmark. This issue arose because the National Bituminous Coal Wage Agreement of 1993 ("NBCWA"), a collective-bargaining agreement to which both Landmark and Apogee are signatories, requires an employee's last signatory employer to provide the employee's lifetime health benefits. Seeking to avoid the liabilities it would incur under NBCWA by virtue of becoming the last signatory employer of the laid-off

-3-

Apogee employees, Landmark negotiated the following provision, which became section 16.5 of the contract:

> Post Employment Liabilities. [Apogee] agrees to be responsible for post-employment liabilities for the first 20 employees hired by [Landmark] for the purpose of performing reclamation work under this Agreement.

J.A. 36.

When employees covered by this provision began to retire, there was a dispute between Apogee and Landmark as to whether Apogee had assumed responsibility for retirement health benefits when it agreed to be responsible for "post-employment liabilities." Apogee claimed it had not, and Landmark brought suit in a West Virginia court. The West Virginia court ruled for Landmark, concluding that the contract language was "clear and unambiguous in its meaning, namely that [Apogee] is responsible for the retirement and health care benefits" of the covered employees. Id. at 88. The court issued a permanent injunction ordering Apogee to pay all of Landmark's post-employment liabilities to the covered employees, including its liability for retirement health benefits. Id. at 89.

Until early 2000, Landmark provided retirement health benefits to the covered employees and submitted invoices for reimbursement to Apogee. In March 2000, however, when Landmark ceased business operations and filed for bankruptcy, it ceased providing benefits to the employees. Apogee, which had stopped receiving invoices, thereafter refused to provide benefits to the employees.

In 2001, plaintiffs in this action -- employees covered by the contract -- moved to intervene in the West Virginia action in order to enforce the court's permanent injunction. The court granted plaintiffs' motion to intervene, whereupon Apogee removed the case to federal court. Plaintiffs then filed a motion to remand the case to state court. The district court denied the motion to remand, concluding that there was federal question jurisdiction because plaintiffs' claim was preempted by federal labor law. Id. at 116. The district court then substituted plaintiffs for Landmark as the real parties in interest and dismissed Landmark from the case. Id. at 121-22.

Shortly thereafter, the district court sua sponte joined the United Mine Workers of America 1993 Benefit Plan ("the Plan") as a necessary party (under NBCWA, the Plan is required to provide benefits to employees whose employer ceases all business operations and is unable to pay). Id. at 124-26. The district court then ordered plaintiffs to file a new complaint setting forth their causes of action against both Apogee and the Plan. Id. at 124. Plaintiffs filed a complaint asserting their state-law contract claim against Apogee and their alternative claim for relief against the Plan under federal law. R. 39.

Upon conclusion of an arbitration between plaintiffs and the Plan,[1] the parties filed cross-motions for summary judgment, with plaintiffs and the Plan asserting that Apogee is responsible for the benefits and Apogee asserting that the Plan is. The district court concluded that Apogee was liable for the benefits pursuant to its contract with Landmark. It thus granted plaintiffs' motion for summary judgment, denied Apogee's motion for summary judgment, and ordered Apogee to provide plaintiffs with retirement health benefits. Id. at 250. Apogee noted a timely appeal.

## II.

We review the district court's grant of plaintiffs' motion for summary judgment de novo. United States v. Ringley, 985 F.2d 185, 186 (4th Cir. 1993). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. Apogee argues that the district court committed errors of law in applying the doctrine of res judicata, in concluding that plaintiffs have standing to

---

[1]The arbitrator found that the Plan was required to provide benefits to plaintiffs pursuant to NBCWA because Landmark had ceased all mining operations and was unable to pay. J.A. 138-39. However, the arbitrator resolved only the dispute between plaintiffs and the Plan under NBCWA, not the dispute between plaintiffs and Apogee under the commercial contract. He specifically noted that if at some future time a court found that Apogee was responsible for the benefits under its commercial contract with Landmark, then the Plan's obligations would be offset by the amount that Apogee was required to pay. Id. at 138.

enforce the contract, and in not holding plaintiffs' suit preempted by federal labor and employment law.  We consider each of these arguments in turn.

## A.

The district court concluded that the doctrine of res judicata barred it from reconsidering the issue -- decided by the state court -- of whether Apogee agreed by contract to be responsible for Landmark's obligation to pay plaintiffs' retirement health benefits.  J.A. 245.  Apogee argues that this was error because res judicata applies only where the parties in the two suits are the same, and here they are not: Landmark was the plaintiff in the original case; plaintiffs here are employees covered by the contract.  Plaintiffs respond that res judicata applies because they are privies of Landmark and that even if res judicata does not apply, the district court was nonetheless barred from reconsidering the issue by the doctrine of collateral estoppel.

We do not find it necessary to resolve these arguments.  Even if neither res judicata nor collateral estoppel prevented us from reconsidering the state court's interpretation of the contract, we would reach the same conclusion as the state court.  The contract language clearly and unambiguously states that Apogee agrees to pay Landmark's post-employment liabilities to the covered employees, and there is no indication that Landmark's liability for retirement

health benefits -- a post-employment liability -- is excluded.  The contract plainly requires Apogee to pay Landmark's liabilities for plaintiffs' retirement health benefits.

To conclude that the contract requires Apogee to pay Landmark's liabilities for plaintiffs' retirement health benefits is not, however, to resolve the current dispute between plaintiffs and Apogee.  The key issue in this dispute -- which was not addressed by the state court -- is whether Landmark's obligation under NBCWA to provide plaintiffs with retirement health benefits survives its bankruptcy.  If Landmark's bankruptcy extinguished its obligations under NBCWA, then Apogee would have no obligation to plaintiffs for retirement health benefits because Apogee is liable only to the extent that Landmark is liable for those benefits.

Again, we do not find it necessary to resolve the issue whether Landmark's obligation under NBCWA to provide plaintiffs with retirement health benefits survives its bankruptcy.  Apogee conceded below that it does.  See J.A. 249 ("Both plaintiffs and the Plan argue at length that Landmark is obliged to plaintiffs and its other retirees 'for life,' and that this obligation survives notwithstanding Landmark's cessation of business and inability to pay.  Apogee acknowledges that Landmark has such an obligation.").[2]

---

[2]The district court similarly did not find it necessary to address this issue.  It simply noted that Apogee's concession was consistent with its resolution of the same issue in a previous case, District 17, United Mine Workers of America v. Brunty Trucking Co., 269 F. Supp. 2d 702 (S.D. W. Va. 2003).  See J.A. 250

Because Apogee acknowledges that Landmark has a continuing obligation to provide plaintiffs with retirement health benefits, and because Apogee agreed by contract to pay Landmark's liabilities for plaintiffs' retirement health benefits, it follows that Apogee is liable under the contract for plaintiffs' retirement health benefits.

B.

Apogee next argues that the district court erred in determining that plaintiffs have standing to enforce the contract as creditor-beneficiaries of the contract. Under West Virginia law, a person is a creditor-beneficiary of a contract "if no intention to make a gift appears from the terms of the promise, and performance of the promise will satisfy an actual [or supposed] or asserted duty of the promisee to the beneficiary." Pettus v. Olga Coal Co., 72 S.E.2d 881, 884 (W. Va. 1952). Here, no intention to make a gift appears in the contract, and performance of the promise (Apogee's payment of Landmark's post-employment liabilities) satisfies a duty of the promisee to the beneficiary (Landmark's duty to provide retirement health benefits to plaintiffs). Plaintiffs are therefore creditor-beneficiaries of the contract, and creditor-beneficiaries can maintain a suit in equity to enforce

_____

("[A]s I discussed in Brunty, a coal operator's obligations to former employees under the 1993 NBCWA do not end merely because the operator ceases business activities.").

-9-

a contract in West Virginia. See Hartmann v. Windsor Hotel Co., 52 S.E.2d 48, 48 (W. Va. 1949). The district court did not err in concluding that plaintiffs have standing to enforce the contract as creditor-beneficiaries of the contract.

## C.

Finally, Apogee argues that plaintiffs' state-law suit to enforce the contract is preempted by the Labor Management Relations Act ("LMRA") and by the Employee Retirement Income Security Act ("ERISA"). We conclude that Apogee's preemption arguments are without merit.

Apogee first argues that section 301 of the LMRA preempts plaintiffs' contract claim because the claim's resolution "depends substantially upon the analysis of a collective-bargaining agreement's terms." See Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245, 247 (4th Cir. 1997). This is so, Apogee contends, because the extent of Landmark's, and therefore Apogee's, liability for plaintiffs' retirement health benefits depends upon the proper construction of NBCWA, a collective-bargaining agreement. However, because both parties agree that NBCWA imposes a lifelong obligation on Landmark regardless of its bankruptcy, we do not need to analyze NBCWA to resolve this suit. Plaintiffs' claim is thus not preempted by section 301. See Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of

[collective-bargaining agreement] terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

Apogee next argues that because the practical effect of enforcing the contract will be that Apogee will add plaintiffs to its ERISA-covered benefit plan, plaintiffs' suit is preempted by ERISA. See 29 U.S.C. § 1144(a) (stating that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA). To determine whether a state law "relates to" an ERISA-covered plan, and is therefore preempted by ERISA, the Supreme Court has stated that courts "must go beyond the unhelpful text [of § 1144(a)] and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995). The Court has explained that Congress' intent in preempting state law was "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at 657. Plaintiffs' contract claim does not implicate this concern. Enforcing the contract between Apogee and Landmark will not create a multiplicity of regulation that would frustrate the nationally uniform

-11-

administration of employee benefit plans.  Accordingly, we conclude that Apogee's ERISA preemption claim, like its LMRA preemption claim, is without merit.[3]  Cf. Operating Eng'rs Health and Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 679 (9th Cir. 1998) (concluding that a contract transferring the obligation for employment benefits from an employer to an insurance company was not preempted by ERISA because the contract did "not expand the remedies provided or contemplated by ERISA," but "merely substitute[d] obligors").

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

---

[3]The fact that neither the LMRA nor ERISA preempts plaintiffs' claim means that there was no federal question jurisdiction over this case at the time it was removed, and plaintiffs' motion for remand should thus have been granted.  However, after the motion to remand was denied, plaintiffs filed a new complaint.  The new complaint raises federal questions because it asserts claims under a collective-bargaining agreement against the Plan.  Plaintiffs' state-law claim against Apogee is properly supplemental to their federal-law claim against the Plan.  See 28 U.S.C. § 1367(a).